MICHAEL MABARDY & others vs. PATRICK McHUGH & another.

Middlesex.   March 3, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Deceit.   Stare decisis.   Sale, Caveat emptor.*

Where, in the negotiations preceding a sale of real estate, the owner shows to the
    prospective purchaser upon the face of the earth the true boundaries of the land
    and does not fraudulently dissuade him from full examination and measurement,
    and the estate is not so extensive or of such a character as reasonably to be in-
    capable of inspection and estimate, and there is no relation of trust between the
    parties, and the owner knowingly makes a false representation as to the area
    of the land, relying on which the prospective purchaser buys the land, the
    purchaser cannot maintain an action of tort for deceit against the seller.

Discussion by RUGG, J., of the principle of *stare decisis.*

An action of tort for deceit cannot be maintained upon a representation of facts
    made by the defendant in an honest belief that the facts are as represented,
    although the plaintiff, believing the facts to be as represented, may have acted
    upon such belief and have suffered damage because the facts were not as the
    defendant represented them to be.

TORT for deceit in the sale of land.   Writ in the Su-
perior Court for the county of Middlesex dated January 18,
1906.

The case was tried before *Stevens,* J.   The facts are stated
in the opinion.   The jury found for the defendants; and the
plaintiffs alleged exceptions.

The case was submitted on briefs.

*J. T. Connolly & J. L. Sheehan,* for the plaintiffs.

*J. H. Vahey, P. Mansfield & T. F. Vahey,* for the defendants.

RUGG, J.   This is an action of tort sounding in deceit.
There was evidence tending to show that the plaintiffs went
upon a certain irregularly shaped tract of land (for false represen-
tations inducing the purchase of which this action was brought)
with one of the defendants, who pointed out the true boundaries
and fraudulently stated that the tract contained sixty-five acres,
when in fact it contained forty and three fourths acres.   Upon
this aspect of the evidence, the trial judge instructed the jury

that "if the plaintiffs . . . were taken over the farm by th.
defendants . . . or [and] were shown the bounds so that the
plaintiffs knew where the farm was and what was comprised
within the bounds, it would not be of any consequence that
representations may have been made by the defendant in relation
to the acreage." The evidence being conflicting as to whether
the boundaries were shown, the jury were further instructed
that if the defendant, who talked with the plaintiffs, "knew
that there were not sixty-five or nearly sixty-five acres, or if he
did not know anything about it and stated it as a fact within his
personal knowledge, then it would be a false representation for
which he would be liable provided" the other elements essential
to a recovery were found to exist.

The correctness of the first of these instructions is challenged.
It is in exact accordance with the law as laid down in *Gordon* v.
*Parmelee*, 2 Allen, 212, and *Mooney* v. *Miller*, 102 Mass. 217.
The facts in the case at bar are similar in all material respects
to these cases. An attempt is made to distinguish them on the
ground that the present plaintiffs were Syrians, ignorant of our
language, and that hence a trust relation existed between them
and the defendant. But whatever else may be said of this con-
tention, it fails because they were accompanied by two of their
own countrymen, who were thoroughly familiar with our lan-
guage and acted as interpreters for them. In effect, the con-
tention of the plaintiffs amounts to a request to overrule these
two cases. They have been cited with approval in *Roberts* v.
*French*, 153 Mass. 60, and as supporting authorities, without
criticism, in other opinions. The court, however, has refused
to apply the rule of those decisions to other facts closely an-
alogous. See *Lewis* v. *Jewell*, 151 Mass. 345 ; *Holst* v. *Stewart*,
161 Mass. 516; *Whiting* v. *Price*, 172 Mass. 240; *Kilgore* v.
*Bruce*, 166 Mass. 136. This court in recent years, by pointed
language and by conclusions reached, has indicated a plain dis-
position not to extend legal immunity for the falsehood of vend-
ors in the course of negotiations for sales beyond the bounds
already established. *Dawe* v. *Morris*, 149 Mass. 188, 192.
*Way* v. *Ryther*, 165 Mass. 226. *Kilgore* v. *Bruce*, 166 Mass.
136. *Andrews* v. *Jackson*, 168 Mass. 266, 268. *Whiting* v.
*Price*, 172 Mass. 240. *Boles* v. *Merrill*, 173 Mass. 491.

*Arnold* v. *Teel*, 182 Mass. 1, 4. *Adams* v. *Collins*, 196 Mass. 422. *Long* v. *Athol*, 196 Mass. 497, 504. *Gurney* v. *Tenney*, 197 Mass. 457. *Lyons Burial Vault Co.* v. *Taylor*, 198 Mass. 63. *Rollins* v. *Quinby*, 200 Mass. 162.

This judicial attitude perhaps reflects an increasingly pervasive moral sense in some of the common transactions of trade. While the science of jurisprudence is not, and under present conditions cannot be, coextensive with the domain of morality, nor generally undertake to differentiate between motives which mark acts as good or bad, yet it is true, as was said by Mr. Justice Brett, in *Robinson* v. *Mollett*, L. R. 7 H. L. 802, 817, that " The courts have applied to the mercantile business brought before them what have been called legal principles, which have almost always been the fundamental ethical rules of right and wrong." This is only a concrete expression of the broader generalization that law is the manifestation of the conscience of the Commonwealth.

In many other jurisdictions the rule of *Gordon* v. *Parmelee* and *Mooney* v. *Miller* has not been followed and false representations as to area of land, even though true boundaries were pointed out, have been held actionable. *McGhee* v. *Bell,* 170 Mo. 121, 135, 150. *May* v. *Loomis*, 140 N. C. 350. *Boddy* v. *Henry*, 113 Iowa, 462, 465 ; *S. C.* 126 Iowa, 31. *Antle* v. *Sexton*, 137 Ill. 410. *Estes* v. *Odom*, 91 Ga. 600, 609. *Lovejoy* v. *Isbell*, 73 Conn. 368, 375. *Cawston* v. *Sturgis*, 29 Ore. 331. *Starkweather* v. *Benjamin*, 32 Mich. 305. *Paine* v. *Upton*, 87 N. Y. 327. *Mitchell* v. *Zimmerman*, 4 Texas, 75. *Walling* v. *Kinnard*, 10 Texas, 508. *Speed* v. *Hollingsworth*, 54 Kans. 436. See also *Fairchild* v. *McMahon*, 139 N. Y. 290 ; *Schumaker* v. *Mather*, 133 N. Y. 590.

Other cases apparently opposed to the Massachusetts rule, on examination prove to go no further than to decide that misrepresentations as to area, when there is no evidence that boundaries were shown, constitute deceit. *Griswold* v. *Gebbie*, 126 Penn. St. 353. *Cabot* v. *Christie*, 42 Vt. 121. *Coon* v. *Atwell*, 46 N. H. 510. *Ledbetter* v. *Davis*, 121 Ind. 119. *Perkins Manuf. Co.* v. *Williams*, 98 Ga. 388. *Sears* v. *Stinson*, 3 Wash. 615. *Hill* v. *Brower*, 76 N. C. 124. *Stearns* v. *Kennedy*, 94 Minn. 439. This is the substance of the latter part of the in-

struction given in the Superior Court, and is the law of this Commonwealth.

The rule of *Mooney* v. *Miller* seemingly has been approved or followed in *Lynch* v. *Mercantile Trust Co.* 18 Fed. Rep. 486; *Crown* v. *Carriger*, 66 Ala. 590; and *Mires* v. *Summerville*, 85 Mo. App. 183, although the last case has been overruled in *Judd* v. *Walker*, 114 Mo. App. 128, 135.

If the point were now presented for the first time, it is possible that we might be convinced by the argument of the plaintiffs and the great weight of persuasive authority in its support, especially in view of *Lewis* v. *Jewell*, 151 Mass. 345. But there is something to be said in support of the two earlier decisions now questioned. A purchase and a sale of real estate is a transaction of importance and cannot be treated as entered into lightly. People must use their own faculties for their protection and information, and cannot assume that the law will relieve them from the natural effects of their heedlessness or take better care of their interests than they themselves do. Thrift, foresight and self-reliance would be undermined if it was the policy of the law to attempt to afford relief for mere want of sagacity. It is an ancient and widely, if not universally, accepted principle of the law of deceit that, where representations are made respecting a subject as to which the complaining party has at hand reasonably available means for ascertaining the truth and the matter is open to inspection, if, without being fraudulently diverted therefrom, he does not take advantage of this opportunity, he cannot be heard to impeach the transaction on the ground of the falsehoods of the other party. *Salem India Rubber Co.* v. *Adams*, 23 Pick. 256, 265. *Slaughter* v. *Gerson*, 13 Wall. 379, 383. *Long* v. *Warren*, 68 N. Y. 426, 432. *Baily* v. *Merrell*, 3 Bulstr. 94. This rule in its general statement applies to such a case as that before us. It is easy for one disappointed in the fruits of a trade to imagine, and perhaps persuade himself, that the cause of his loss is the deceit of the other party, rather than his own want of judgment.

It is highly desirable that laws for conduct in ordinary affairs, in themselves easy of comprehension and memory, when once established, should remain fast. The doctrine of *stare decisis* is as salutary as it is well recognized. *Rogers* v. *Goodwin*, 2 Mass.

475, 478. *Holmes* v. *Hunt*, 122 Mass. 505, 516. *Smith* v. *Worcester*, 182 Mass. 232. *Commonwealth* v. *Walsh*, 196 Mass. 369. *Spicer* v. *Spicer*, Cro. Jac. 527. *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429, 574, 638. *Goodtitle* v. *Kibbe*, 9 How. 471, 478. *Minnesota Co.* v. *National Co.* 3 Wall. 332. While perhaps it is more important as to far-reaching juridical principles that the court should be right, in the light of higher civilization, later and more careful examination of authorities, wider and more thorough discussion and more mature reflection upon the policy of the law, than merely in harmony with previous decisions (*Barden* v. *Northern Pacific Railroad*, 154 U. S. 288, 322), it nevertheless is vital that there be stability in the courts in adhering to decisions deliberately made after ample consideration. Parties should not be encouraged to seek reexamination of determined principles and speculate on a fluctuation of the law with every change in the expounders of it. As to many matters of frequent occurrence, the establishment of some certain guide is of more significance than the precise form of the rule. It is likely that no positive rule of law can be laid down that will not at some time impinge with great apparent severity upon a morally innocent person. The law of gravitation acts indifferently upon the just and the unjust. A renewed declaration of law that is already in force, supported by sound reason and not plainly wrong, in the long run probably works out substantial justice, although it may seem harsh in its application to some particular case. These considerations are regarded as so weighty by the House of Lords that it cannot overrule any of its own decisions. *London Tramways Co.* v. *London County Council*, [1898] A. C. 375.

The conclusion is that we do not overrule the decisions whose soundness has been debated at the bar, although we do not extend their scope, but confine them strictly to their precise point, namely, that where the seller of real estate shows upon the face of the earth its true boundaries to the purchaser and does not fraudulently dissuade him from making full examination and measurement and the estate is not so extensive or of such character as to be reasonably incapable of inspection and estimate, and there is no relation of trust between the parties, the purchaser has no remedy for a misrepresentation as to the area alone.

The instruction as to the difference between representation and expression of opinion* was adequate and adapted to the testimony.

The charge is not reported in full.   No requests for rulings were presented, and the only exceptions relate to the statement of the rule of *Gordon* v. *Parmelee* and *Mooney* v. *Miller*.   It does not appear, therefore, that full instructions were not given as to the effect of fraudulent dissuasion by the defendants (of which there was some evidence) from a full examination of the farm by the plaintiffs.

*Exceptions overruled.*

---

* The portion of the charge referred to was as follows: " Now, what is the next issue?   It is that those representations were known by the person who made them — that is, by the defendant McHugh, — to be false ; or that, not knowing them to be true, he represented them to be true.   If he expressed an opinion that there were sixty-five acres, and that expression of opinion was made in good faith, it would not be a false representation for which he could be bound ; because there must have been a fraudulent intent on his part, although he is bound by the natural results of his own statement.   But if he stated an opinion that there were sixty-five acres, and that was an honest opinion, he could not be held, however mistaken he may have been.   But if he knew that there were not sixty-five or nearly sixty five acres, or if he didn't know anything about it and stated it as a fact within his personal knowledge, then it would be a false representation for which he would be liable; provided, further, that it was a material representation, and that it was a representation that induced these plaintiffs to buy the farm."