CHARLES SCHNITZER, Doing Business under the Name of LE ROY SHIRT COMPANY, Appellant, *v.* CARL LANG et al., Doing Business under the Name of LANG & HOFFMAN, Respondents.

Contract of sale — action for breach of warranty — duty to inspect — notice — buyer under no duty to resort to extraordinary tests — when knowledge of defects to be. imputed to buyer a question of fact — erroneous dismissal of complaint on ground of delay in giving notice of defect — seller cannot destroy warranties by denying their existence.

1. The. duty of a buyer of goods to inspect is confined to forms of inspection that are customary and reasonable. He is under no duty to resort to extraordinary tests.

2. Where, at the date of delivery, a defect in goods was not apparent to the eye and could not be ascertained until the goods were washed or laundered, it cannot be. said as matter of law that plaintiff, who had washed a sample before the making of the contract, and found it free from defects, was under a duty thereafter to resort to tests so rigorous, but the knowledge to be imputed to him, in the exercise of reasonable diligence, must be determined by the triers of the facts.

3. It was, therefore, error for the Appellate Division to direct a dismissal of the complaint, in an action for breach of warranty as to color of goods, on the ground of unreasonable delay in giving notice of the breach, where it appeared that the seller had notice that the goods, the last of which were delivered in January, were

to be placed in stock for the fall trade, which meant that there would be no opportunity to discover defects in coloring until after manufacture and wear, and notice of the defect was actually given in August.

*Schnitzer* v. *Lang,* 207 App. Div. 595, modified.

(Argued June 6, 1924; decided September 30, 1924.)

APPEAL from a judgment entered January 16, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff, entered upon a verdict and directing a dismissal of the complaint.

*Eugene L. Bondy* for appellant. The Appellate Division erred in dismissing the complaint on the ground that as a matter of law the plaintiff had not notified the defendants of the breach of warranty within a reasonable time under section 130 of the Personal Property Law. (*Mastin* v. *Boland,* 178 App. Div. 421; *Maggioras* v. *Edson,* 164 N. Y. Supp. 377; *Matthes* v. *Benn,* 191 App. Div. 557; *American Steam Gauge & Valve Co.* v. *Mechanics Iron Foundry Co.,* 214 Mass. 299; *Johnston* v. *Lanter,* 87 Kan. 32; *Dick* v. *Clark, Jr., Co.,* 161 Ky. 622; 1 Chamberlayne on Evidence, 122; 5 Wigmore on Evidence [2d ed.], 559, § 2553; *Helgar Corp.* v. *Warner's Features,* 222 N. Y. 449.)

*Samuel Fleischmann* for respondents. As a matter of law, upon the undisputed testimony, the plaintiff did not give notice of the alleged defects within a reasonable time after delivery of the goods. The defendants' motion to dismiss the complaint upon that ground should have been granted by the trial court, and the dismissal for that reason by the Appellate Division was right. (*Henderson Tire & Rubber Co.* v. *Wilson,* 235 N. Y. 489; *Niehoff-Schultze Grocer Co.* v. *Gross,* 205 App. Div. 67, 73, 74; 237 N. Y. 509; *Ficklen Tobacco Co.* v. *Friedberg,* 196 App. Div. 409; *Matthes* v. *Benn,* 191 App. Div. 557; *Glenmore Woolen Mills* v. *Goldberg,* 186 N. Y. Supp.

580; *Kaufman* v. *Levy*, 102 Misc. Rep. 689; *Pierce Foundation Corp.* v. *Eagle Supply Co.*, 180 N. Y. Supp. 88; *Harburger* v. *Stern Bros.*, 189 N. Y. Supp. 74; *Lieberman* v. *Beck & Conhaim*, 179 N. Y. Supp. 472; *Broessneck* v. *Taylor Son & Co.*, 46 Misc. Rep. 63.)

CARDOZO, J. On June 11, 1919, plaintiff and defendants made a contract in writing by which plaintiff agreed to buy and defendants to sell 78 pieces of silk at the price of $1.60 per yard. The quality was to be number 1,000, a description adopted by the defendants and peculiar to their business. The colors were to be distributed among the total yardage in designated proportions. Delivery was to be as soon as possible, beginning in July and to be completed by November 1. The plaintiff bought the goods for use in his business, which was that of a manufacturer of shirts.

As to many of the facts, there is sharp conflict in the testimony. Since the judgment under review is one dismissing the complaint, it is enough for present purposes to state the plaintiff's version. Before the contract was signed, he was told by the defendants' salesman that number 1,000 was the designation in the defendants' business of a quality of silk with fast colors suitable for shirts. A sample stated to be of this number was left with the plaintiff, who tested it by washing and scrubbing, found the colors fast, and thereupon gave the order. Deliveries were slow; and by November 1 only 59 pieces had been received out of the total 78. The goods as they arrived were inspected with a view to the discovery of any defects that inspection would reveal, and were then placed upon the shelves. When November 1 had passed and delivery was overdue, the plaintiff telephoned the defendants complaining of the delay. He said that he would no longer be able to use the goods for the spring trade, but would keep them on his shelves, and hold them till the following season, *i. e.*, the fall of 1920.

With this understanding, the belated deliveries, continuing till January 29, 1920, were accepted, and the goods were laid aside. In the meantime some sample shirts had been made up to be exhibited to the trade. There is evidence that in August, 1920, a few of these shirts were sold to employees, and were then washed for the first time. The colors ran, and at once there was complaint. On August 27, 1920, the plaintiff gave notice to the defendants that the colors washed out as soon as the goods were placed in water. This action followed to recover damages for breach of warranty. The breach assigned is twofold: breach of an implied warranty that the bulk shall correspond with sample; and breach of the implied warranty of a dealer that goods in which he deals shall be of merchantable quality (Pers. Prop. Law [Cons. Laws, chap. 41], § 97, subdivisions a and c). The jury found a verdict for the plaintiff. The Appellate Division reversed, and held that as a matter of law there had been unreasonable delay.

" If, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor " (Pers. Prop. Law, § 130). The buyer did not know of this breach. The question is whether as a matter of law he ought to have known. We think the knowledge to be imputed to him in the exercise of reasonable diligence must be determined by the triers of the facts. At the dates of delivery, the defect, the running of the colors, was not apparent to the eye. It could not be ascertained till the silks were washed or laundered. We cannot say as a-matter of law that the plaintiff was under a duty to resort to tests so rigorous (*American Steam Gauge & Valve Mfg. Co.* v. *Mechanics Iron Foundry Co.*, 214 Mass. 299). He had already washed the sample, and found the colors fast. He had no reason to suppose, when the goods thereafter delivered

were fair upon their face, that defects foreign to the sample were latent in the bulk (*M. & M. Co.* v. *Hood Rubber Co.*, 226 Mass. 181, 183). So at least a jury might find if they found his testimony true. "Reasonable time is not an inflexible term. It depends commonly on the circumstances of each case" (*Am. Steam G. & V. Mfg. Co.* v. *Mech. Iron Foundry Co., supra;* 2 Williston, Sales [2d ed.], §§ 476, 484a). The defendants had notice that the goods were to be placed in stock and held in reserve for the fall season of 1920. This meant that there would be no opportunity to discover the defective coloring until the shirts had been manufactured and customers had worn them. As to imperfections so concealed, a reasonable man might not unreasonably assume that the delivery had been made in accordance with the contract (*M. & M. Co.* v. *Hood Rubber Co., supra*). The plaintiff was under no duty to resort to extraordinary tests. His duty to inspect was confined to forms of inspection that were customary and reasonable (*Doane* v. *Dunham*, 79 Ill. 131; 2 Williston, Sales [2d ed.], §§ 474, 476). We think a jury might find that this duty was fulfilled.

Some point is made that in later correspondence the defendants disclaimed a willingness to guarantee the goods at all. The chief subject of discussion was a supposed warranty that the goods would not "slip, pull or fuzz." This had no relation to a warranty of the firmness of the colors. If some expressions here and there might be thought to have a broader meaning, the result would not be changed. The contract had been made. The defendants could not destroy its warranties by denying their existence.

The judgment of the Appellate Division in so far as it dismisses the complaint should be reversed, and a new trial granted, with costs to abide the event.

POUND, ANDREWS and LEHMAN, JJ., concur; HISCOCK, Ch. J., McLAUGHLIN and CRANE, JJ., dissent.

Judgment reversed, etc.